IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TRAVIS L. WATSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   1:19cv945 |
| | ) |
| OFFICER ENGLAND,[1] et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommendation on the "Motion by Defendants England, M. Johnson and Coleman to Dismiss Plaintiff's Complaint and Amended Complaint (Doc. Nos. 2 and 4) in Part with Prejudice" (Docket Entry 16) (the "Motion"). For the reasons that follow, the Court should grant in part and deny in part the Motion.

**BACKGROUND**

Pursuant to 42 U.S.C. § 1983, Travis L. Watson (the "Plaintiff"), an inmate with the North Carolina Department of Public Safety, commenced this action against Officer England,

---

[1] Plaintiff originally identified "Officer England" as "Officer English" (see, e.g., Docket Entry 2 at 1), but subsequently filed a "Notice of Correction" (Docket Entry 4 at 1), docketed as an "Amended Complaint" (see Docket Entry dated Jan. 23, 2020), clarifying that Plaintiff "is suing Officer England" rather than "Officer English" (Docket Entry 4 at 1). [For legibility reasons, this Opinion uses standardized capitalization and spelling in all quotations from the parties' materials. In addition, citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.]

Officer M. Johnson, and Officer Coleman (collectively, the "Defendants") for their alleged violation of Plaintiff's constitutional rights during Plaintiff's pretrial detention at the Guilford County Detention Center. (See Docket Entry 2 (the "Complaint") at 1-12.) According to the Complaint:

> Plaintiff was intentionally, deliberately, and maliciously denied the right to due process by [Officer] Engl[and] and [Officer] Johnson, who were at the time classification officers at the Guilford County Detention Center. Plaintiff was unlawfully imprisoned, as a pretrial detainee, in Administrative Segregation for 90 days by the mentioned officials without notice for or reason or any written findings presented, immediately after he had completed a 20-day segregation stint for a rule violation. It was Plaintiff's first rule violation and no one had been caused any harm. After the completion of the 20-day segregation stint, these officials named above did arbitrarily abuse their authority by placing Plaintiff on permanent Administrative Segregation, not to protect inmates or employees from danger but to overpunish Plaintiff with an extensive segregation without due process which constitutes false imprisonment. This was an unnecessary infliction of pain and punishment which was not used to maintain order and was disproportionate to the infraction committed. Under the Due Process Clause, pretrial detainees cannot be punished. Plaintiff completed [the] 20-day segregation on 2-22-17 and was immediately transferred to another segregation unit (5E) for an additional 90 days until he was transferred to prison on 5-22-17 for unknown reasons. Officer Coleman was responsible for transferring Plaintiff to Administrative Segregation.

(Id. at 12.)

The Complaint's only other allegation regarding Defendants states that Officer Johnson and Officer England "did act in their official capacities being employees of the Guilford County

Detention Center and thereby acted under the color of state law. Officer Coleman is/was also an employee of the same." (Id. at 4.)

Defendants move to entirely dismiss Plaintiff's claims against Officer Coleman, as well as to dismiss Plaintiff's official-capacity claims against Officer England and Officer Johnson. (See Docket Entry 16.) In particular, Defendants maintain that "Plaintiff's claims against [Officer] Coleman should be dismissed because they are not plausible on their face in view of the facts alleged in the Complaint." (Id. at 1.) Defendants further assert that Plaintiff's official-capacity claims "should be dismissed because Plaintiff has failed to allege that Defendants acted pursuant to any official policy or custom which inflicted injury." (Id. at 2.)[2]

In response, Plaintiff filed a "Reply to Defendants' Motion to Dismiss" (Docket Entry 22 (the "Response") at 1), which solely addresses Plaintiff's individual-capacity claim against Officer Coleman. (See id. at 1-4.) In relevant part, the Response asserts:

> In this case, [] Plaintiff was a pretrial detainee being detained in the Guilford County Jail (GCJ) pending trial. [Officer] Coleman is a classification officer at the GCJ as admitted[3] by [] Defendants and so he would know that

---

2 The Motion also argues that "Plaintiff's State Law claims against Defendants, if any, should be dismissed." (Id.) The Complaint contains no state-law claims (see generally Docket Entry 2), mooting this aspect of the Motion.

3 The Complaint identifies Officer England and Officer
(continued...)

3

[] Plaintiff was a pretrial detainee and he would know
that [] Plaintiff had just finished a 20-day segregation
stint for a rule infraction which was [] Plaintiff's
first rule infraction. [Officer] Coleman would have
access to and a knowledge of Plaintiff's rule infraction
to know that [] Plaintiff posed no danger to staff or
other inmates to warrant [Officer] Coleman placing []
Plaintiff in a segregation unit "permanently," as he did
tell [] Plaintiff. . . . As stated, [Officer] Coleman is
a classification officer at the GCJ who has access to the
same information, as to inmates at the GCJ, that
[Officer] England and [Officer] Johnson have access to.
And so, before [Officer] Coleman was designated to
transport [] Plaintiff to further lockup, he had the same
knowledge as to Plaintiff's segregation infraction and
status that the other Defendants had. [Officer] Coleman
knew that no legitimate justification had been
established to warrant Plaintiff being placed in
segregation permanently and yet he carried out the
act. . . . The fact that [] Defendants (including
[Officer] Coleman) acted outside of proper due process to
continue to imprison [] Plaintiff after his 20-day
segregation stint, implies that their actions were
arbitrary.

    [Officer] Coleman is not entitled to qualified
immunity because, as discussed, he acted outside of the
procedural protections of due process. . . . [Officer]
Coleman is a classification officer, versed in these
type[s] of matters and daily situations dealing with
inmates, and he should know that these rights are
established.

    For the foregoing reasons, [] Plaintiff asks the
Court to consider [Officer] Coleman's knowledge as a GCJ
classification officer. [Officer] Coleman has
contributed to the violation of [] Plaintiff's rights, by
being the actual and direct hand that placed [] Plaintiff
under the illegal restriction. [Officer] Coleman has a

---

3(...continued)
Johnson by "Job or Title" as "Classification" officers (Docket Entry 2 at 2), but neither provides a description of Officer Coleman's job/title (see id. at 3) nor elsewhere identifies him as a classification officer (see generally Docket Entry 2). However, Defendants filed an answer admitting "that [Officer] Coleman was a Detention Classification Officer" (Docket Entry 18 at 2).

4

Case 1:19-cv-00945-LCB-LPA   Document 25   Filed 02/05/21   Page 4 of 12

>     duty to be in tune with these things and should have
>     known that his actions were prejudicing []
>     Plaintiff. . . .

(Id. at 2-3.)

Defendants reply that the Response improperly attempts to alter the Complaint's allegations against Officer Coleman. (See Docket Entry 23 at 2-4.) Accordingly, Defendants assert that such allegations "should be disregarded by th[e] Court." (Id. at 4.)

## DISCUSSION

### I. Relevant Standards

Defendants move to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"). (See Docket Entry 16 at 1.) In reviewing a Rule 12(b)(6) motion, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Ct. of App., 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom., Coleman v. Court of App. of Md., 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted). Moreover, a pro se complaint must "be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). Nevertheless, the Court "will not accept legal conclusions couched

5

as facts or unwarranted inferences, unreasonable conclusions, or arguments." United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 455 (4th Cir. 2013) (internal quotation marks omitted); see also Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (explaining that the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine [the] requirement that a pleading contain more than labels and conclusions" (internal quotation marks omitted)). The Court can also "put aside any naked assertions devoid of further factual enhancement." SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015), as amended on reh'g in part (Oct. 29, 2015) (internal quotation marks omitted).

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct. Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks omitted). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other

6

words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint" cannot "survive a Rule 12(b)(6) motion." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

## II. Analysis

### A. Officer Coleman

Defendants first move to dismiss Plaintiff's claims against Officer Coleman on the ground that "they are not plausible on their face in view of the facts alleged in the Complaint." (Docket Entry 16 at 1.) In regards to Officer Coleman, the Complaint asserts simply that "[he] was responsible for transferring Plaintiff to Administrative Segregation." (Docket Entry 2 at 12.) This lone assertion fails to support a reasonable inference that Officer Coleman violated Plaintiff's due process rights. As such, the Complaint fails to state a viable claim against Officer Coleman. See, e.g., Iqbal, 556 U.S. at 678.

7

Plaintiff attempts to overcome this deficiency by adding various allegations regarding Officer Coleman in his Response. (See Docket Entry 22 at 1-3.) However, "[a plaintiff] is bound by the allegations contained in [hi]s complaint and cannot, through the use of motion briefs, amend the complaint," Zachair, Ltd. v. Driggs, 965 F. Supp. 741, 748 n.4 (D. Md. 1997), aff'd, 141 F.3d 1162 (4th Cir. 1998). See, e.g., Morgan Distrib. Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief." (citations and internal quotation marks omitted)); see also Days v. U.S. Bank Nat'l Ass'n, No. 318cv440, 2019 WL 8619628, at *2 (W.D.N.C. June 4, 2019) ("In order to amend their complaint, [the p]laintiffs may not simply add allegations to their already existing complaint as they have done here. Rather, they must submit a proposed amended complaint that contains all claims they intend to bring in this action against all [the d]efendants they intend to sue. That is, [the p]laintiffs may not amend their complaint in piecemeal fashion." (emphasis omitted)). Accordingly, Plaintiff cannot stave off dismissal through the Response's new allegations against Officer Coleman.

8

Moreover, Plaintiff's new allegations fail to state a viable claim. The Response alleges that "[Officer] Coleman is a classification officer . . . and so he would know that [] Plaintiff was a pretrial detainee and he would know that [] Plaintiff had just finished a 20-day segregation stint" for his first rule infraction. (Docket Entry 22 at 2 (emphasis added).) The Response further maintains that "[Officer] Coleman would have access to and a knowledge of Plaintiff's rule infraction to know that [] Plaintiff posed no danger to staff or other inmates to warrant [Officer] Coleman placing [] Plaintiff in a segregation unit 'permanently,' as he did tell [] Plaintiff." (Id. (emphasis added).) The Response further alleges that, as a classification officer, Officer Coleman "has access to the same information . . . that [Officer] England and [Officer] Johnson have access to. And so, before [Officer] Coleman was designated to transport [] Plaintiff to further lockup, he had the same knowledge as to Plaintiff's segregation infraction and status that the other Defendants had." (Id. (emphasis added).) Thus, the Response asserts, "[Officer] Coleman knew that no legitimate justification had been established to warrant Plaintiff being placed in segregation permanently and yet he carried out the act." (Id.)

In sum, the Response maintains that, through his position, Officer Coleman could obtain information regarding Plaintiff's disciplinary history and status. (See id. at 2-3.) Because

9

Officer Coleman allegedly "has access to the same information" (id. at 2) as the officers who "plac[ed] Plaintiff on permanent Administrative Segregation" (Docket Entry 2 at 12), Plaintiff contends that "[Officer] Coleman knew that no legitimate justification had been established to warrant Plaintiff being placed in segregation permanently and yet he carried out the act" (Docket Entry 22 at 2). At best, however, Plaintiff's allegations raise "the mere possibility of misconduct," and thus cannot "survive [Defendants'] Rule 12(b)(6) motion," Francis, 588 F.3d at 193.

In other words, on the facts (improperly) alleged in the Response, the Court could conclude that Officer Coleman possibly utilized his "access to . . . information[] as to inmates at the [Greensboro Detention Center]" to learn about Plaintiff's disciplinary history and status "before [Officer] Coleman was designated to transport [] Plaintiff to further lockup." (Docket Entry 22 at 2.) However, the Court also must conclude that it remains equally possible that Officer Coleman did not avail himself of this information before his "designat[ion] to transport [] Plaintiff to further lockup." (Id.) Accordingly, Plaintiff fails to "nudge[ his] claims [against Officer Coleman] across the line from conceivable to plausible," necessitating their dismissal. Twombly, 550 U.S. at 570; accord Iqbal, 556 U.S. at 678 (explaining that if a "complaint pleads facts that are merely consistent with

10

a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief" (internal quotation marks omitted)).

## B. Official Capacity Claims

Defendants further move to dismiss Plaintiff's official-capacity claims against Officer England and Officer Johnson. (See Docket Entry 16 at 2.)  Under Section 1983, official-capacity liability occurs only if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992) (internal quotation marks omitted).  Relevant here, "an official's discretionary acts, exercised in carrying out official duties, do not necessarily represent official policy."  Perdue v. Harrison, No. 1:17cv403, 2017 WL 4804363, at *2 (M.D.N.C. Oct. 24, 2017).  "Rather, the official must have 'final authority' over government policy with respect to the action in question to trigger official capacity liability."  Id. (certain internal quotation marks omitted).  The Complaint contains no allegations that Officer England and Officer Johnson either acted pursuant to any Greensboro Detention Center policy or possessed "final authority" over any such custom or policy.  (See generally Docket Entry 2.) Accordingly, Plaintiffs' official-capacity claims against Officer England and Officer Johnson fail as a matter of law.

11

## CONCLUSION

Plaintiff fails to state a plausible claim against Officer Coleman and further fails to allege that Defendants acted pursuant to any official policy.

**IT IS THEREFORE RECOMMENDED** that the Motion (Docket Entry 16) be granted in part and denied in part as follows: Plaintiff's claims against Officer Coleman and his official-capacity claims against Officer England and Officer Johnson should be dismissed without prejudice.[4]

This 5th day of February, 2021.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

---

[4] Defendants ask the Court to dismiss the relevant claims with prejudice. (See id. at 1-2.) However, as a general matter, "where a defect in the complaint is curable, the court should grant the dismissal without prejudice." Misel v. Green Tree Servicing, LLC, 782 F. Supp. 2d 171, 178 (E.D.N.C. 2011). Because Plaintiff could potentially cure his pleading deficiencies, dismissal without prejudice remains appropriate here.